# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH

| | |
|---|---|
| JANELL STRUPP, and MARTIN STRUPP,<br><br>Plaintiffs,<br><br>v.<br><br>ATLAS GLOBAL, LLC, a Utah Limited Liability Company, TOUCH A LIFE, a Utah Limited Liability Company, PAUL ISOM, an individual, TROY GRAF, an individual, ANALISE MATHESON, an individual, KAREN URBANEK, an individual, BRUCE L. REDD, an individual, PATRICK ISOM, an individual, BOYCE SANDERSON, an individual, BRANDON WATERS, an individual, SCOTT RUTHERFORD, an individual, RALPH DLUGAS, an individual, BRETT MUNSON, an individual, and JOHN DOES 1-10,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING RULE 55(C) MOTION TO SET ASIDE DEFAULT CERTIFICATE**<br><br>Case No. 2:18-cv-00168-DN<br><br>District Judge David Nuffer |

This matter came before the Court on Defendants Atlas Global, LLC, Touch a Life, Paul Isom, Troy Graf, Analise Matheson, Karen Urbanaek, Bruce L. Redd, Patrick Isom, Boyce Sanderson, and Brandon Waters' ("Defendants") Rule 55(c) Motion to Set Aside Default Certificate.[1] After considering oral argument and the briefing on file in this case, and for the reasons set forth below, the Motion[2] is DENIED.

---

[1] Rule 55(C) Motion to Set Aside Default Certificate ("Motion"), docket no. 27, filed May 23, 2018.

[2] *Id*.

BACKGROUND

Plaintiffs' claims arise out of a series of events occurring in the summer and fall of 2016. Plaintiffs allege that Defendant induced Plaintiffs to provide a $50,000.00 investment in Atlas Global LLC pursuant to a promissory note (the "Note"). Plaintiffs allege that they were induced to provide money to Atlas Global LLC by false representations made by Defendants. At about this same time, Plaintiffs allege that they entered into a separate contract for the purchase of equipment with Defendant Touch a Life. Plaintiffs allege that Defendants Troy Graf and Analise Matheson made false representations concerning the equipment, and that the equipment eventually shipped to Plaintiffs was of a different type and quality than the equipment they had been sold. As a result of these allegations, Plaintiffs have now brought claims for breach of contract as to the promissory note and sale of equipment, and securities fraud claims under Utah and Federal law based on failure to register the promissory note, failure to register as brokers, and misrepresentations made in connection with the sale of the promissory note.[3]

Plaintiffs retained counsel and began to formally seek redress via demand letters sent to Defendants in May of 2017.[4] Plaintiffs sent additional demand letters in October of 2017.[5] In December of 2017 Plaintiffs sent an unfiled copy of a Complaint to Defendants.[6] On January 29, 2018, Plaintiffs filed their Complaint in the Fifth Judicial District Court for Washington County.[7] On February 23, 2018, Defendants filed a Notice of Removal requesting the case be removed to this Court.[8] Thereafter, Plaintiffs amended their Complaint to add the federal securities claims

---

[3] Amended Complaint ("Complaint"), docket no. 14, filed March 14, 2018.

[4] *See* docket 28-1, at ¶¶ 5-6, filed June 2, 2018.

[5] *See id.* at ¶ 8.

[6] *See* docket 28-2, at ¶2, filed June 2, 2018.

[7] Docket no. 2-2, filed February 23, 2018.

[8] Docket no. 2, filed February 23, 2018.

2

on March 14, 2018.[9] On April 3, 2018, after Defendants' time to Answer the Amended Complaint had run pursuant to Fed. R. Civ. P. 15(a)(3), Plaintiffs' counsel followed up with Defendants' Counsel to see if they intended to file an Answer to the Amended Complaint.[10] Defendants' counsel requested an extension through Monday, April 9 to file an Answer to the Amended Complaint, which request was granted.[11] After the new April 9 deadline passed, Plaintiffs sent a Notice of Intent to Take Default to Defendants, informing Defendants that Plaintiffs would take default if an Answer was not filed by April 13, 2018.[12] On April 17, 2018, Plaintiffs filed a Motion for Entry of Default.[13] On April 23, 2018, the clerk entered a default Certificate against Defendants.[14]

On May 23, 2018, Defendants filed their Motion to Set Aside Entry of Default Certificate.[15] Therein, Defendants assert that Plaintiffs' claims are barred based on Plaintiff Janell Strupp's membership in private membership associations known as Atlas Global PMA, LCA and Dragon Secret PMA.[16] Defendants allege that Plaintiff Janell Strupp signed a contractual application for membership in Atlas Global PMA and Dragon Secret PMA on October 27, 2016 (the "PMAs").

Atlas Global PMA, LCA was registered with the state of Utah on or about January 10, 2017.[17] A separate legal entity, Atlas Global LLC, was registered with the State of Utah on or

---

[9] Docket no. 14, filed March 14, 2018.

[10] Docket no. 28-2 at ¶ 9, June 2, 2018.

[11] *Id.* at ¶ 10.

[12] *Id.* at ¶ 11; docket no. 28-8, June 2, 2018.

[13] Docket no. 23, April 17, 2018.

[14] *See* Docket No. 24, filed April 23, 2018.

[15] *See* Docket No. 27, filed May 23, 2018.

[16] *Id.* at 7-9, filed March 7, 2018.

[17] Docket no. 28-9, filed June 2, 2018.

about July 29, 2016.[18] The promissory note, which is dated September 17, 2016, and which forms the basis of Plaintiffs' claims, did not identify Atlas Global PMA, but was between Martin P. Strupp and Janell R. Strupp, lenders, and Atlas Global LLC, borrower.[19]

## ANALYSIS

Rule 55(a) of the Federal Rules of Civil Procedure provides for the entry of a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."[20] Under Rule 55(c), the "court may set aside an entry of default for good cause." "The principal factors in determining whether a defendant has met the good cause standard are (1) whether the default was the result of culpable conduct of the defendant, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant presented a meritorious defense."[21]

Turning first to the potential prejudice in this case, there is not significant prejudice to Plaintiffs if the default should be set aside. Defending a case is not unreasonably prejudicial. Although Plaintiffs argue that there is a risk of investment funds being dissipated over time, this factor is not decisive.

Plaintiffs argue that Defendants conduct is culpable, and that "[i]f the default was the result of the defendant's culpable conduct, the district court may refuse to set aside the default on

---

[18] Docket no. 28-10, filed June 2, 2018.

[19] Docket no. 28-11, filed June 2, 2018.

[20] Fed. R. Civ. P. 55(a).

[21] *Hunt v. Ford Motor Co.* 65 F.3d 178, *3 (10th Cir. 1995) (citing *In re Dierschke*, 975 F.2d 181, 183 (5th Cir. 1992)).

4

that basis alone."[22]  "Generally a party's conduct will be considered culpable only if the party defaulted willfully or has no excuse for default."[23]  The *Hunt* court suggests that a defendant's "failure to answer or otherwise respond to the complaint after receiving actual notice of the complaint demonstrate[s] a willful disregard for the Court."[24]

In the present case, the Defendants failed to respond despite receiving actual notice of the Complaint and notice that default would be taken against them if they did not answer.  While that is culpable conduct, it is noted that defaults are disfavored, disputes connected with a motion to set aside the default are resolved in favor of the defendant when possible to encourage a decision on the merits.[25]  "Strong policies favor resolution of disputes on their merits."[26]  Therefore, it must be determined whether Defendants have a meritorious defense.

In the present case, Defendants have not asserted a meritorious defense.  This question is not even close.  The only defense that Defendants have argued is not to any specific claim, but to jurisdiction.  There's not an allegation of payment on the promissory note, there's not an allegation that the equipment was of great quality, and there's no denial that the equipment was protested and demands were made.  Defendants do not address the securities law allegations.  Instead, Defendants confine their arguments to the PMAs and assert that those PMAs take this case out of this jurisdiction.

The PMAs do not apply to the claims in this suit.  The language of the PMAs describe their purpose as follows:

---

[22] *Hunt,* 65 F.3d at *3.

[23] *Id.*

[24] *Id.* at *4.

[25] *Heber v. United States*, 145 F.R.D. 576, 577 (D. Utah 1992).

[26] *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991).

5

> We declare the basic right of all of our members to select spokesmen from our number who could be expected to give wisest counsel and advice concerning the need for physical and mental health care assistance and to select from our number those members who are the most skilled to assist and facilitate the actual performance and delivery of therapy, treatment and care.
>
> We proclaim the freedom to choose and perform for ourselves the types of therapies and treatment modalities that we thin (sic) best for diagnosing, treating and preventing illness and disease of our minds and bodies and for achieving and maintaining optimism wellness. We proclaim and reserve the right to include medical and health options that include but are not limited to cutting edge treatment modalities and therapies practiced or used by any types of healers or theorists or practitioners the world over whether traditional or nontraditional, conventional or nonconventional.
>
> Specifically, the mission of our Association is to provide members with the highest level of quality care and the most effective methods of treatment and education. We treat members and their health and medical conditions, and not merely the symptoms experienced. Our Association understands that wellness has many dimensions. The Association may provide comprehensive, conventional, complementary and alternative care and education, to diagnose all aspects of a member's condition. The Association strives to provide the most effective means of treatment at an affordable fee. More specifically, the association may employ or educate member on a variety of other/alternative treatments and modalities, some known now and others to be discovered in the future, as requested by members, including but not limited to: Diagnostic Health Testing, Treatment, Supplements, and Education, all for optimization of health and well-being as alternatives to standard medications, concerning the modalities of service and all benefits to members.[27]

In addition, under the terms of the PMAs, a person entering into the PMAs agrees as follows:

> I understand that the fellow members of the Association that provide services and care do so in the capacity of a fellow member and not in the capacity of a licensed health care provider. I further understand that within the association no doctor-patient relationship exists but only a contract member-member Association relationship. In addition, I have freely chosen to change my legal status as a public patient customer or client to a private member of the Association.[28]

---

[27] [Docket no. 27-3, at 1-2](), filed May 23, 2018.

[28] *Id.* at 2.

Finally, Defendants rely on the following provisions to assert that this matter is outside the jurisdiction of the Court:

> In addition, I understand that, since the Association is protected by the First and Fourteenth Amendments to the U.S. Constitution, it is outside the jurisdiction and authority of Federal and State Agencies and Authorities concerning any and all complaints or grievances against the Association, any Trustees, members or other staff persons. All rights of complaints or grievances all [sic] be settled by an Association Committee and will be waived by the member for the benefit of the association and its members. Because the private and security of membership records maintained within the Association which have been held to be inviolate by the U.S. Supreme Court, the undersigned member waives HIPAA privacy rights and complaint process. Any medical or healthcare records kept by the association will be strictly protected and only released upon written request of the member. I agree that violation of any waivers I this membership contract will result in a no contest legal proceeding against me. In addition, the Association does not participate in any medical insurance plans of collections on behalf of the member but will provide a suitable invoice for the member to pursue reimbursement by his/her insurance company, if applicable. I agree to join the Association, a private membership association under common law, whose members seek to help each other achieve better health and live longer with good quality of life.[29]
>
> …
>
> My activities within the Association are a private matter that I refuse to share with the State Medical Board, the FDA, FTC, Medicare, Medicaid or my own insurance company without my express permission. All records and documents remain as property of the Association, even if I receive a copy of them. I fully agree not to file a malpractice lawsuit against a fellow member of the Association, unless that member has exposed me to a clear and present danger of substantive evil. I acknowledge that the members of the Association do not carry malpractice Insurance.[30]
>
> …
>
> I understand that I am receiving a first year complimentary membership for attending this conference. If I choose to participate in renewal I understand there may be a fee at that time. The said term beginning with the date of the signing of this contract, and by these presents do hereby certify, attest and warrant that I

---

[29] *Id.*

[30] *Id.* at 3.

7

have carefully read the above and foregoing ATLAS GLOBAL PMA Contractual Application for Membership and I fully understand and agree with same.[31]

The language of the PMAs clearly show that they are related to health treatment and healthcare. By their terms, the PMAs do not apply to investments or financial obligations. In fact, there's no financial obligation under these PMAs. There may be a fee in the future for membership, but the agreement specifically disclaims a monetary fee. The decisions regarding healthcare treatment are made independent of the investment, and there is no requirement that members make a $50,000.00 loan.

Furthermore, the language in the Note further suggests that these PMAs have nothing to do with the Note. The Note requires that "Lender shall have the rights and remedies available at law, in equity, or otherwise."[32] In addition, the Note specifies that "[t]his Note cannot be amended except pursuant to a writing signed both by Lender and by Borrower."[33] Finally, the Note acknowledges that it "will be governed by the internal laws of the State of Utah . . . ."[34] Atlas Global LLC did not sign the PMA, or any other document saying that the note was superseded by the PMA, and the Note retains all rights and remedies available in law or equity or otherwise. The Note and the PMA cover two different subjects. Furthermore, Atlas Global LLC is a separate organization from the Atlas Global PMA, LCA. Atlas Global LLC is registered with the State of Utah and in good standing, while the entity Atlas Global PMA, LCA has now expired and was originally formed months after the Note was funded. There appears to be no record relationship shown between Atlas Global PMA, LCA and Atlas Global LLC. Additionally, there is no evidence that Ms. Strupp renewed her membership, so the terms of that

---

[31] *Id.*

[32] [Docket no. 28-11, at ¶ 2](#).2, filed June 2, 2018.

[33] *Id.* at ¶ 3.1.

[34] *Id.* at ¶ 3.5.

agreement applying to medical treatment have expired anyway. Furthermore, the co-holder on the Note, Martin Strupp, is not a signatory to any of the PMAs that have been provided to the Court.

Finally, other jurisdictions have examined these types of agreements in different contexts and have held that these PMAs cannot exclude individuals from lawful government regulation. *See, e.g., Lytle v. United States Dep't of Health and Human Serv.*, 612 Fed. Appx. 861, 862 (8th Cir. 2015) (finding that a product sold through a private membership association does not exempt it from the application of the Federal Food, Drug and Cosmetic Act ("FDCA")); *United States v. 2035 Inc.*, No. CIV. 14-5075-JLV, 2015 WL 213170, at \*2 (D.S.D. Jan. 14, 2015) ("Hiding behind a curtain of private membership associations . . . does not shield [defendants] from the authority of the FDCA or the jurisdiction of the court."); *Sec. & Exch. Comm'n v. Janus Spectrum LLC*, No. CV-15-609-PHX-SMM, 2017 WL 4870377, at \*7 (D. Ariz. Aug. 8, 2017) ("the Court further finds that [defendant] cannot shield himself from the application of federal securities laws through his operation of a private membership association."); *Diruzzo v. State*, No. 13-16-00638-CR, 2018 WL 1960119, at \*8 (Tex. App. Apr. 26, 2018) (rejecting the assertion that a private membership association removed the states authority and finding that "[t]he power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud.") (quoting *Dent v. State of W.Va.*, 129 U.S. 114, 122 (1889)). While this case is about a private dispute, the same principles apply. The PMAs cannot take a collateral agreement, like a note, out of the jurisdiction of the courts. The PMAs do not purport to do that, and probably could not do that anyway. With regards to claims as to financial obligation, the language in the agreement that

9

any and all complaints or agreements are outside the authority of federal and state agencies and authorities is contrary to the legal system of the United States. Accordingly, Defendants have not asserted a meritorious defense.

Defendants conduct is culpable and that Defendants have failed to present a meritorious defense. Good cause does not exist to set aside the default.

## CONCLUSION

It is therefore ORDERED that Defendants' Motion to Set Aside Default Certificate[35] is DENIED.

Dated July 12, 2018.

BY THE COURT:

_David Nuffer_
David Nuffer
United States District Judge

---

[35] Docket no. 27, filed May 23, 2018.